```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                          :
MEDITERRANEAN SHIPPING CO. (USA) INC.     :
and MEDITERRANEAN SHIPPING CO. S.A.,      :
                         Plaintiffs,      :      08 Civ. 4304 (DLC)
                                          :
            -v-                           :      OPINION & ORDER
                                          :
PATRICK ROSE and DOCK SIDE                :
TRANSPORTATION,                           :
                         Defendants.      :
                                          :
-----------------------------------------X
```

Appearances:

For Plaintiffs:
Jorge A. Rodriguez
Mahoney & Keane LLP
11 Hanover Square – Tenth Floor
New York, NY 10005

DENISE COTE, District Judge:

Plaintiffs Mediterranean Shipping Co. (USA) Inc. and Mediterranean Shipping Co. S.A. (collectively "Mediterranean") bring this breach of contract action pursuant to this Court's admiralty jurisdiction, and move for a default judgment against defendants Patrick Rose ("Rose") and Dock Side Transportation ("Dock Side"). Since the contract on which the plaintiffs bring suit pertains solely to overland transportation, there is no admiralty jurisdiction over this dispute. The motion for entry of a default judgment is denied and the action is dismissed for lack of subject matter jurisdiction.

BACKGROUND

The following facts are taken from the complaint and materials submitted in support of the default judgment motion. Mediterranean is an ocean carrier, and Dock Side is a motor carrier. Dock Side is wholly or partially owned by Rose. The defendants entered into an agreement which allowed them to use Mediterranean's containers in order to transport goods over land. Mediterranean asserts that defendants used the containers in order to perform the land leg of intermodal shipments of goods, pursuant to contracts that Mediterranean had with various shippers. The agreement granted defendants access to pick up Mediterranean's containers, deliver them elsewhere, and then return the containers to Mediterranean.

Under the terms of the agreement between Mediterranean and defendants, defendants were required to return the containers to Mediterranean within a certain time period or incur detention charges. Specifically, defendants were signatories to a Uniform Intermodal Interchange and Facilities Access Agreement ("UIIFAA") that provided for such charges. Mediterranean alleges that defendants' failure timely to return its containers was a breach of the UIIFAA, and that defendants owe $19,700 to Mediterranean for detention charges.

The UIIFAA facilitates the interchange of intermodal transportation equipment, such as trailers, containers, and associated devices, between a party authorizing the use of its equipment and a motor carrier who is granted access and use of the equipment for the purpose of road transport.  A UIIFAA agreement grants the motor carrier access to the equipment provider's terminal to pick up the equipment, and allows the provider of the equipment to impose charges for use of the equipment after a specified time.  Such charges are to be set out in an addendum that is specific to the parties, but Mediterranean has submitted no such addendum.  Under a UIIFAA agreement, the motor carrier indemnifies the equipment provider for any liability arising from the motor carrier's use of the equipment.  The motor carrier is also required to carry a commercial automobile insurance policy to insure the equipment. Finally, the agreement provides that the law of Maryland, which is the principal place of business of the Intermodal Association of North America, governs issues concerning the validity and interpretation of the agreement.

Mediterranean's complaint invokes admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333 as the basis for this Court's subject matter jurisdiction.  The defendants have not answered the complaint, which was filed on May 7, 2008, nor did they appear at a hearing before the Court on September 26, 2008,

3

at which they were ordered to show cause why a default judgment should not be issued against them. At that hearing, this Court sua sponte raised the question of whether it had subject matter jurisdiction over this action, and subsequently ordered Mediterranean to submit a brief addressing this issue by October 10, 2008.

DISCUSSION

"Issues relating to subject matter jurisdiction may be raised at any time, . . . even by the court sua sponte." Cave v. East Meadow Union Free School Dist., 514 F.3d 240, 250 (2d Cir. 2008). "If a court perceives at any stage of the proceedings that it lacks subject matter jurisdiction, then it must take proper notice of the defect by dismissing the action." Id. See also Fed. R. Civ. P. 12(h)(3).

Mediterranean asserts that this Court has subject matter jurisdiction over this action under 28 U.S.C. § 1333. Section 1333 provides that district courts have original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1). In determining whether admiralty jurisdiction exists for a breach of contract claim, the Second Circuit has stated that "[w]hile the precise categorization of the contracts that warrant invocation of the federal courts' admiralty jurisdiction has proven particularly elusive," courts

"should look to the contract's nature and character to see whether it has reference to maritime service or maritime transactions." Folksamerica Reinsurance Co. v. Clean Water of New York, Inc., 413 F.3d 307, 312 (2d Cir. 2005) (citation omitted).

In Norfolk Southern Railway Co. v. James N. Kirby Pty Ltd., 543 U.S. 14 (2004), the Supreme Court addressed the issue of mixed contracts, i.e., contracts that had both sea and land components. The Court stated that in determining whether admiralty jurisdiction is present, the inquiry focuses on "the nature and character of the contract," id. at 24 (citation omitted), and that admiralty jurisdiction is proper where the "principal objective of a contract is maritime commerce." Id. at 25. The Court explained that

> so long as a bill of lading requires substantial carriage of goods by sea, its purpose is to effectuate maritime commerce -- and thus it is a maritime contract. Its character as a maritime contract is not defeated simply because it also provides for some land carriage. Geography, then, is useful in a conceptual inquiry only in a limited sense: If a bill's sea components are insubstantial, then the bill is not a maritime contract.

Id. at 27. Following this decision, the Second Circuit stated that it "recognize[s] two exceptions to the general rule that 'mixed' contracts fall outside admiralty jurisdiction." Folksamerica, 413 F.3d at 314 (citation omitted). One exception is where "the claim arises from a breach of maritime obligations

5

that are severable from the non-maritime obligations of the contract." Id. (citation omitted). The second, modified to take account of Norfolk S. Ry. Co., is where, despite the mixed nature of the contract, "the principal objective of [the] contract is maritime commerce." Id. at 315 (citation omitted).[1]

Admiralty jurisdiction has also been found over actions for the recovery of demurrage or detention charges pursuant to a contract for the carriage of goods by water. See, e.g., Luckenbach S.S. Co. v. Berwind-White Coal Mining Co., 7 F.2d 793, 795 (2d Cir. 1925) (admiralty jurisdiction over claim for "conventional" demurrage pursuant to term in charter party). Demurrage charges are "remuneration of [a] shipowner for the detention of its vessel beyond the number of days allowed by the charter-party," Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp., 204 F.3d 384, 386 n.2 (2d Cir. 2000) (citation omitted), or "charges to be assessed shippers or

---

[1] The Second Circuit also noted in Folksamerica that several cases had found that before inquiring into the subject matter of the contract at issue, courts should "first make a threshold inquiry into the subject matter of the dispute." 413 F.3d at 312 (citation omitted). The court noted, however, that the Supreme Court's decision in Norfolk S. Ry. Co. did not engage in this threshold analysis before considering the subject matter of the contract, and thus that there was "uncertainty as to the extent to which this Court's 'threshold inquiry' test survives" that decision. Id. at 313. This uncertainty need not be resolved in this case. Even if the dispute in this case -- which involves unpaid detention charges for containers -- could survive this threshold inquiry, as discussed further below, the subject matter of the contract at issue is not principally maritime and therefore admiralty jurisdiction is not triggered.

6

consignees who detain . . . carriers' freight containers beyond an allowable free time." Capitol Transp., Inc. v. United States, 612 F.2d 1312, 1315 n.1 (1st Cir. 1979) (citation omitted). See also Black's Law Dictionary 8th ed. 2004 (demurrage means "damages owed by a charterer to a shipowner for the charterer's failure to load or unload cargo by the agreed time" or "[a] charge due for the late return of ocean containers or other equipment").[2]

In Ocean Transport Line, Inc. v. American Philippine Fiber Industries, Inc., 743 F.2d 85, 87 (2d Cir. 1984), the court exercised admiralty jurisdiction over an ocean carrier's claim for demurrage arising from the detention of the ocean carrier's containers by the shipper. The court noted that the contract between the shipper and the carrier for the carriage of goods by water contained a provision specifying the number of days the shipper had to unload its cargo after the journey, and found that "[t]he purpose of stipulating days for loading and discharging operations is to allow the shipper a period of time during which it may detain the ship without payment and to make the shipper liable for any detention thereafter." Id. at 89.

---

[2] In Bouchard Transp. Co. v. Tug Ocean Prince, 691 F.2d 609 (2d Cir. 1982), the Second Circuit noted that while "detention" means "(d)amages for lost profits arising from the loss of use of a vessel for repairs after a collision or other maritime tort," id. at 612 n.2 (citation omitted), cases often use the words "detention" and "demurrage" interchangeably. Id.

7

The court found that "[s]uch [a] well-established admiralty principle[] extend[ed] . . . to lay-day provisions for cargo shipping containers." Id.

Furthermore, "agreements for the acquisition of ship equipment," such as radios and radar, "have been viewed as maritime contracts." CTI-Container Leasing Corp. v. Oceanic Operations Corp., 682 F.2d 377, 380 (2d Cir. 1982); see also Williamson v. Recovery Ltd. Partnership, 542 F.3d 43, 47, 49 (2d Cir. 2008) (non-compete and non-disclosure agreements for work in connection with recovery of shipwreck were maritime contracts). Likewise, in light of the fact that courts in other contexts had characterized containers as "functionally a part of the ship," CTI-Container Leasing Corp., 682 F.2d at 380 (citation omitted), the Second Circuit found that "a lease of cargo containers for use on a ship is a maritime contract." Id. at 380-81 (emphasis supplied). The issue in CTI-Container Leasing Corp. was whether facts in the record demonstrated that the lease of the containers was for their use on a ship, versus "overland transport by truck or train or in overseas transport by freighter airplane." Id. at 381; see also Integrated Container Service, Inc. v. Starlines Container Shipping, Ltd., 476 F. Supp. 119, 125 (S.D.N.Y. 1979) (Leval, J.) (finding lease of containers by party whose "vessels were engaged in the ocean carriage of containerized cargo" was maritime contract where

8

party leasing containers offered both overseas shipping services as well as "trucking services delivering the containers to their final inland destination").

Where a contract, however, is "exclusively nonmaritime, admiralty jurisdiction [does] not reach disputes arising under it." Project Hope v. M/V IBN SINA, 250 F.3d 67, 73 n.3 (2d Cir. 2001). In Project Hope, a shipper contracted with a common carrier to ship goods over both land and sea. Id. at 70-71. The common carrier in turn contracted with one company for the ocean leg of the journey and with another for the land leg. Id. at 71. The Court found that the contract between the carrier and the company responsible for the land leg was exclusively nonmaritime, and thus could not be the basis of admiralty jurisdiction. Id. at 73 n.3.

The objective of the UIIFAA, which is the contract that Mediterranean alleges has been breached in this case, is not predominantly maritime commerce. Rather, the agreement is essentially a leasing arrangement allowing defendants to lease Mediterranean's transportation equipment, including containers, in order to carry out land-based deliveries pursuant to other contracts for the carriage of goods that are not at issue here. See Humphrey v. International Longshoremen's Ass'n, 548 F.2d 494, 496 n.11 (4th Cir. 1977) ("Equipment Interchange Agreements are, in effect, leases which enable motor carriers to transport

and use containers owned by ocean-going carriers and which set forth their rights and obligations while doing so."). The UIIFAA specifies that the motor carrier is being granted possession of the equipment "for the purpose of road transport," and the entire contract is focused on the obligations the motor carrier has in using those containers while transporting goods by land pursuant to other agreements. Because the primary objective of this contract is leasing equipment for land transport, and not maritime commerce, there is no admiralty jurisdiction over this dispute.

Mediterranean advances two arguments for why the UIIFAA is a maritime contract and admiralty jurisdiction over this action is proper, relying on Norfolk S. Ry. Co. and CTI-Container Leasing Corp. Neither case, however, supports its cause.

As discussed above, Norfolk S. Ry. Co. involved a bill of lading that provided for the transportation of goods over both sea and land, and the issue was whether the land component of the goods' journey rendered the contract nonmaritime. The contract at issue here, however, is not for the transport of goods at all. Rather, the UIIFAA is for the use of Mediterranean's equipment, including containers, presumably so that defendants can deliver goods by land pursuant to other contracts. This equipment-usage agreement, and the detention fees imposed under it, is exclusively nonmaritime in nature.

Similarly, this is not an action by an ocean carrier to recover demurrage fees against a shipper or consignee of goods pursuant to a contract for the shipment of goods by sea. Rather, as discussed above, the detention fees sought in this case are pursuant to a wholly nonmaritime contract between an ocean carrier and a motor carrier. Furthermore, Mediterranean has not alleged that any contract for the shipment of goods, by sea or otherwise, has been breached by defendants.

CTI-Container Leasing Corp. is likewise distinguishable. While that case involved the lease of cargo containers, the court found it was a maritime contract because the containers were leased for use on a ship. Here, however, the equipment is being used exclusively for overland transportation. The fact that the same containers may have been used for a sea-based leg of transportation pursuant to other contracts with other parties does not alter the principal objective of the contract at issue here, which is for the use of containers for the purpose of land transportation. Mediterranean's contention that the contract should be deemed maritime simply because it involves the use of containers that had been used previously on a ship fails.

CONCLUSION

The August 21, 2008 motion for entry of a default judgment is denied. As Mediterranean has asserted no other basis for

subject matter jurisdiction besides admiralty, this action is dismissed for lack of subject matter jurisdiction. The Clerk of Court shall close this case.

SO ORDERED:

Dated:   New York, New York
         October 23, 2008

/s/ Denise Cote
DENISE COTE
United States District Judge